Case 12-2536, American Civil Liberties Union of Michigan v. Federal Bureau of Investigation United States Department of Justice Argument not to exceed 15 minutes per side Ms. Chaudhary for the appellates Good morning, your honors. I'd like to reserve three minutes for rebuttal. You may. If it please the court, my name is Ms. Chaudhary and I represent the plaintiff, the American Civil Liberties Union of Michigan. At the heart of this appeal is plaintiff's freedom of information at request for information about the FBI's use of a new and dramatically expanded power. A power that allows it to profile entire racial, ethnic, national origin, and religious communities for intelligence collection. In 2009, when the FBI began to use these new powers, the Bureau's own general counsel acknowledged to Congress that they raised serious civil liberties concerns and would be reassessed based on public comment. Yet in response to the plaintiff's request for information about the use of those powers, the defendants have been sweeping secrecy claims, raising two important questions for this court to resolve. The first is whether the government can keep secret under FOIA Exemption 7A its use of public source information about racial and ethnic groups, even though disclosure of this community-wide information would not reveal information about specific investigations. Counsel, you refer to new and expanded powers, and then you refer to public source data. So what new powers do they need to look at public source data? Your Honor, our brief on pages 11-13 describes the three new authorities that since 2003, in 2008, and later, provided the FBI authority to use community-wide racial and ethnic information. This is the FBI's Domestic Investigation and Operations Guide, Section 4.3.C.2, which is attached to Exhibit A of the Jury Declaration. And that authority in particular allowed the FBI, for the first time, to use community-wide ethnic and racial information. So these were not new powers in the sense of new statutes or new constitutional decisions. You're just saying these were administrative practices. Exactly, Your Honor. It's really not a new power, it's a new policy. Well, it's the FBI's policy and their belief that they have the power to use community-wide ethnic and racial data in a way that they had not previously asserted. Had anybody said they couldn't? When you say you have a new power, it sort of assumes there was a limitation previously. Well, according to the 2003 Department of Justice Guidance on the Use of Race, which is also discussed in that same document in the Dyad, Section 4.3, the government itself talks about racial profiling as being unconstitutional in routine law enforcement investigations and carved out an exception in border integrity and national security investigations. It didn't discuss, in particular, a distinction between the individual use of race or ethnicity and the community-wide use. It created that distinction in the Dyad itself, and that's what's new about this program and troubling. Just to outline for the Court, though, the second issue that I'd also like to talk about today is whether this Court will permit the government to use an entirely secret and non-adversarial process for resolving the FOIA requester's claim that the government improperly relies on 5 U.S.C. Section 552C, the FOIA's exclusion provision, to keep information secret from the public. And that would be a decision that would apply not only to this case, but also to all other FOIA exclusions in this document. With respect to that, that 552C was added by Congress after the initial FOIA. Yes, Your Honor, in 1986. It appears on its face to give the responding agency, not just the FBI, but whoever, the authority, in fact, to say things that aren't true, which is Congress seems to have implied that this would be secret. So what do you think Congress had in mind, other than what they do here, which is to let the judge in Cameron, which happens in other proceedings, make a determination as to the validity? Your Honor, the text of the exclusion provision doesn't tell the government it can lie to FOIA requesters about whether or not responsive records exist or don't exist. It indicates that the government can, in three distinct categories of information, treat the records as non-responsive to FOIA. The government's position is that the government can say nothing about those records and perhaps lie. And that's the position it's in. But if it says it can treat them as non-responsive, when arguably, from your position, they are responsive, it authorizes them to do something that is, let us say, at least masking. But that's the purpose of it, isn't it? So I'm kind of asking, what did Congress mean by giving that, other than to say you can mask whether or not you have this kind of record? Your Honor, it granted them the authority to provide a low-arm response. And the three sponsors of the FOIA exclusion provision, Representative Kindness, Representative English, and Senator Leahy, all refer explicitly to the D.C. Service decision in the Philippine versus CIA, when talking about the FOIA exclusion provision at the time it was proposed amendment, saying that the purpose of this provision would be to give law enforcement agencies the power to issue, we cannot confirm or deny the existence of the requested records responses. And that is known as a blow-mark response. So the government can protect its interests in the secrecy of records, just as the CIA routinely does in the context of the blow-mark doctrine. The blow-mark doctrine was one in which you would pose a hypothetical and say, well, if they did it – we're not going to tell you whether they exist or not, but if they did, we don't have to turn this information over. It just appears – and correct me or tell me why I'm wrong about this – 5552C seemed to have been enacted specifically to not require following the blow-mark procedure. You're saying it was enacted to institutionalize the blow-mark procedure. Yes, Your Honor. To institutionalize it with respect to three specific categories of law enforcement records that were not necessarily committed to following the blow-mark doctrinal for, and those three categories are C1, ongoing criminal investigation records, C2, confidential informant records, and C3, certain pieces of classified information relating to foreign intelligence or international terrorist organizations. And as I mentioned, the sponsoring representatives themselves referred explicitly to blow-mark, and the fact that that is the kind of response that the government should give when they receive a request that appears to ask for exclusive records. All right. Then isn't there – simply as a logical matter, the difference between the statement, treat the records as not subject to FOIA, as opposed to GLOBAR, which says we won't tell you whether we have anything. In GLOBAR, it could be that they're record-subject to FOIA, but our response is we're not going to tell you. This says you can act as though records that are responsive don't exist. Your Honor, that's not clear, and that's not a clear distinction in the text of the FOIA. The FOIA, by saying that the government can treat records as non-responsive, means that the government doesn't have to – Well, let me stop you, because it says treat the records as not subject to the requirements of this section. And the requirements of this section, Your Honor, are requirements to identify responsive records, to describe them, and to explain which FOIA exemptions justify withholding of any information. If you don't have to do that, you don't have to follow the GLOBAR. But, Your Honor, the GLOBAR procedure is identical, identically applied to the exclusion process, and I think it would be helpful if I explained how this process would have worked if the district court had employed it. The government, in the first instance, before a case was even filed, would have issued a statement identifying any specific parts of the FOIA request – for example, paragraphs 10 or 11 of the request – and the specific exclusion it interpreted to apply without confirming or denying the existence of any records. So that's – you're saying that that is hypothetical, because then their statement would be what? If we were to have any records, they would be like this? No, their statement actually is just as hypothetical as in the GLOBAR process itself. Their statement is, we don't confirm or deny whether any responsive records to paragraph 10 or 11 even exist. But we interpret that provision of the FOIA request to seek excludable records under, for example, section 552c3, and then the plaintiff would then have a chance to argue and say, no, we challenge that interpretation of those two provisions of the request and the specific subsection of the exclusion provision that you're pointing to. For example, the government can't withhold information whether or not it exists under paragraph 10 and 11 because they're not classified information that we can point to in a public record. Classified documents that we think you're talking about that actually have been officially acknowledged. The district court would then rule on the propriety of the government's interpretation, whether or not that subsection of the exclusion provision was accurately and appropriately applied. I think we understand how it would work if you got your way here. Am I right that the FBI has followed the same procedure since 1986 in every single case that they followed in this case? With one exception, Your Honor, and that is Memphis Publishing Company v. FBI. I can provide a citation in that district court case. It's 79. Absolutely not an informant. No, Your Honor, it's not. It's a request by a newspaper for possibly a denial of identity. I don't recall, to be clear. With that one exception, am I correct that this procedure that the FBI has developed and followed pretty uniformly since 1986 has been reviewed by quite a number of courts, not a single one of which has indicated that the procedure is not a proper interpretation of 552C and rather the Glomar procedure needs to be followed? Your Honor is correct, but let me clarify. In none of those cases, and this is the exact challenge in challenging the government's interpretation of an exclusion. Because the government doesn't issue a Glomar response, a requester has no idea of knowing whether an exclusion could potentially be at play or not. And we agree that the government is permitted to keep the secrecy of the existence or non-existence of excludable records. But the problem is, because there's no Glomar response, FOIA requesters are unable to have any clue unless they are sophisticated and have studied the FOIA to know that an exclusion might be in play. And this is primarily why litigation over exclusions has been so challenging. But you got, did you not, you got a copy of the fact that they had submitted something to the judging panel? Yes, Your Honor, but we had no opportunity to argue why any exclusion provision would not have been appropriately applied. I understand that. Let me, we cut you off when you were starting to say Memphis Publishing and I did not, at a quick glance, remember that from the briefs. It was not cited in the briefs, Your Honor. But what's the case and what does it say? The case, if I could provide a citation, just so Your Honor has it, is 879 F sub 2nd 1. This is a D.C. District Court case from 2001. And as Judge McKee mentioned, it does, I believe, involve a C-2 exclusion implication. The FOIA request stopped records about an individual, I believe, somebody who had been a journalist and was alleged to have been an informant who had spied on Martin Luther King Jr. And in that case, there is litigation over the government's Glomar response. The government said we can't deny or confirm whether any records about this journalist being an informant exist. But the plaintiff, because they received that Glomar response, was able to challenge whether or not the records exist to challenge that interpretation. Well, but you're saying they made a Glomar response. They didn't make a 552C response. They made the Glomar response in response to the plaintiff's challenge under 552C-2, which relates to confidential information. So they simply chose to do that publicly, or did they send me in camera and the judge said, I don't buy it? The judge said, we don't need to go in camera because we can publicly and adversarially adjudicate this question. But the judge decided that? Yes. So in that sense, you would have exactly – you got exactly the same possibility. The judge got the in-camera response. If the judge didn't buy it, he could have asked for more information in camera. He could have said, I understand it, and I'll ask the adversary. If the judge says, I don't buy this, I order you to file it in the Vaughan Index or to do something else. That's not correct, Your Honor. I'm sorry. I may have misspoken. The government – the judge did not look at ex parte materials. The judge said, I don't need to go there because there can be public adjudication about whether or not the government has officially acknowledged this person's status as an informant. Let me resolve this public question, the question of whether the government has acknowledged these records before I even go to ex parte process. And that is the process we're asking for here. I'll look at the case. Thank you, counsel. You'll have your time to resolve it. Thank you. Good morning, Your Honor. My name is Lisa Corp. Katherine Dorsey on behalf of defendants' attorneys at the Federal Jury Investigation and Department of Justice. There are only two issues limited on – that remain on appeal here, Your Honors. And the first I want to – excuse me – to specify is this is not a challenge to the FBI's Domestic Investigations and Operations Guide. It is a FOIA request, and it's a challenge to the response – the government's response to FOIA requests. And limited are the two issues about whether the government properly invoked Exemption 7A to withhold public source material regarding race or ethnic communities in Michigan because disclosing information – such information could reasonably be expected to interfere with enforcement proceedings. And two, the exclusion issue and whether that was properly litigated ex parte in the camera. On the first issue, on the Exemption 7A, although plaintiffs state that they are seeking just publicly available racial and ethnic information, that isn't accurate. If that's all that they saw of population statistics, that kind of information, that is publicly available, and they couldn't get it from public sources. What they are seeking here is that information that has been selectively compiled in law enforcement record to find out how the FBI uses that information. And here, as explained in the Horton Declaration, that would reveal information about ongoing law enforcement investigations, which could harm pending or rescheduled – If you put this in a cartoon fashion, would it be fair to say you've got a publicly available map, and the FBI has drawn a line around it and says, we've got a bunch of jewelry store robberies inside this line, so we're going to flood the zone with people watching out for jewelry store robberies? Well, I think that – I mean, I can say – You put it in a cartoon fashion, so you don't want people to know that. Right, in the sense that if there's FBI information that's added to a map, that it's no longer just that public information. There's investigatory sets of information, and obviously the FBI does not want people to know the potential criminals they're investigating, that they are the subject of an investigation. In one sense, all you have is the map, a line, and a title, at minimum. Obviously, if there's a document that says, and watch out for John Jones, that's even more so. But to put the best face on their side of it, you've got a map, a line, and some kind of a title. I mean, I think there are degrees where, of course, the FBI looks at these documents to see if there's segregable information that could be released, and if that part of the map could be disclosed, they would do so. The problem is, even if you have a public – I'll take another maps example. Let's say you have some printouts from big maps of ethnic food stores in a particular area, and the FBI has printed out those maps of the selected ethnic food stores in a particular community. Now, although those might be public maps, if those were released, that would obviously indicate that the FBI is looking at those ethnic food stores in that community, which might reveal the subject of an investigation of why they're looking at those, because maybe there's a drug operation that's moving its product through those food stores, something like that. That's what I was going to ask you. You at first said that you didn't want to disclose what sort of value added you've made to the public information. But in reality, you don't even want to reveal which public information among the broad category of public information you're focusing in on looking at, whether you're adding something to it or not. Am I right about that? That's correct, Your Honor. In this case, I can say there are no maps or other newspaper clippings that are just public source information stuck in there, in these documents. Now, there are things like population statistics that are compiled and contained within those law enforcement documents. But again, in the context of these documents, to release that information would indicate the focus or scope of these investigations. This is like when you have Supreme Court nominees, people want to know what books they're reading. I assume that if you had the FBI library checkout list, that would be very valuable to criminals, even though the books are publicly available. That's correct, Your Honor. And certainly, again, if there was, say, verbal information that couldn't be released without interfering with enforcement proceedings, the FBI does so. A good counterpoint, I think, is this Dickerson case that was cited in our brief, where public documents, it was newspaper articles and public court documents were released from FBI files. And the reason they could do that in that case, it related to the disappearance of Jimmy Hoffa. And that investigation at that point was well known. It was public information. So it's not like releasing newspaper articles about the disappearance of Jimmy Hoffa was going to indicate anything or reveal any information to the public. Here, it's quite a different story. If there are no further questions regarding 7A, I will move on to the exclusion issue. And one point in response to Plaintiff's claim that I'd like to point out is that FOIA, the exclusion process, is on books. It has been that way since 1986. It is a matter of public statute. So, certainly, plaintiffs are aware that they can always raise a claim of an exclusion in the case. And when they do so, the government will respond to that claim by filing an ex parte in-camera declaration in the district court to explain whether or not it has invoked an exclusion. And then the district court can review that declaration. And that's exactly what was done in this process. Okay, so you tell the judge either we didn't invoke it or if we did invoke it, here's why. And the judge, I take it, then can make a ruling based on that. The judge can hold a hearing in-camera or ask for more information. What happens if the judge says, I don't buy it, the exclusion does not apply? Then does the judge order you to put it in the bond index or what? I can't speak to exactly what a district court judge would do because it has not happened in any case I'm aware of to this point. But, theoretically, yes, a district court judge could obviously disagree with the government. We would hope that the judge would do it in such a way that the judge would give us an opportunity to either make a supplemental filing in court or would not disclose the fact that an exclusion had been invoked in a public way. In effect, does the GLOMAR procedure still exist in the sense that that could be an upshot that the judge would order you to file a GLOMAR response? The GLOMAR response for an exclusion doesn't work for a number of ways, which I'd like to get into. First, it – Well, I understand why you say it doesn't work. If you're right, I was just pursuing the line of analysis that the judge believes you're wrong and 552C doesn't apply, that sort of puts you back to pre-1986. And could then your response lawfully be a GLOMAR response? It might depend – I think it would depend, Your Honor, on how the ruling was made and whether it was public because if it disclosed the fact that an exclusion was invoked, then we might not be able to invoke the GLOMAR because public – too much might have been allowed. But just to respond to the point where – there are a number of reasons why we think that the GLOMAR response wouldn't work in the generic case of an exclusion. First is, as Your Honor already pointed out, an exclusion is not – records that are subject to an exclusion are not subject to the requirements of FOIA. And when Congress added the exclusions in 1986, GLOMAR responses had already been used and were around. There would have been no reason to – What's your – I mean, I haven't looked at the citation they have, but what's your – do you have a response to their statement that this is what the sponsors meant? I think those particular statements of the legislative history, those sponsors were not well-informed or confused about the fact that the GLOMAR already existed because there is other legislative history which indicates that, you know, the exclusion was intended to give greater protection than a GLOMAR response. And that – and so the exclusions were necessary because GLOMAR was not sufficient. So I think between their – that contrary legislative history and also the fact that, you know, in – for 1986 there wasn't GLOMAR, so if there would have been no need to amend FOIA in 1986 to add the exclusion, the GLOMAR was really sufficient. And the other, as a practical matter also, GLOMAR is – when you give a GLOMAR response, it's tied to a specific exemption. There's not just a kind of GLOMAR response in the air. So when you tie it to a specific exemption, that reveals information as well. Okay. And give me that, that – what does it say? We neither confirm nor deny that we have anything subject to Exemption 3? Exactly. The way it's stated? But you have to tie it to a specific exemption. And so you identify that exemption and then say you cannot confirm or deny whether our record's responsive. And so that would necessarily, by saying it's a B-1 or, you know, a B-3, that can reveal some type of information itself. And similarly, your plaintiffs suggest in their type of GLOMAR response, they suggested that we would invoke a particular which provision of the exclusion was at issue. And that also, by – if we say C-1, C-2, or C-3, that also reveals information because C-1 lets you know it's an ongoing investigation where the subject is not aware of the investigation. C-2 lets you know that the records relate to a confidential informant. And C-3 lets you know that it pertains to classified information about foreign intelligence, counterintelligence, or international terrorism. So each of those provides more information than, of course, the exclusion process was intended to do. And also, as Your Honor pointed out, no court has adopted a procedure, as claims suggest, for this. This has been – exclusion proceedings have been litigated since 1986, and no court has found the need to adopt such a GLOMAR procedure. What's happening to all of the other ACLU claims that are similar to this one that apparently were filed at or about the same time in jurisdictions throughout the United States? They're all at different spots of litigation at this point, or some of them may still be processing the request. I'm not sure. There is another appeal that is now pending in the Third Circuit on very similar issues, and I think other cases will probably be winding their ways through to this one. So there's only one district court – only two district court decisions, the one at issue here and one other one that's on appeal to the Third? As far as I know, those are the only decisions so far. Counsel, let me ask you this. Looking at the little brief, the other side of the brief, with respect to the statements by the congressmen and senators, one of the ones that's cited is a statement at page 57 of their brief that says agency actions pursuant to 5 U.S.C. 5-52C are subject to de novo judicial review. Do you dispute that? It does say like agency determinations under B, but would you characterize or agree that what's happening here is de novo judicial review before the district judge? Correct. We don't disagree that there's de novo judicial – that there's judicial review of an exclusion claim when it's made. And the only – I'm – the Memphis Publishing Company, of course, since it wasn't raised in the briefs, I haven't had a chance to read that case. But the one point I would like to make that's possible, again, I haven't read it, is that if a request was specifically made for records about a confidential informant, that necessarily raises a category of records that is covered by C-2 because the definition of a C-2 record is for informant records according – for confidential informant records unless the informant's status has been officially confirmed. So it might be that the district court in that case said, well, those records definitely would be covered by an exclusion because there's no dispute. And so the judge is perhaps going to identify whether the informant – or figure out whether the informant was still confidential or not because the exclusion provision has – expires essentially if the confidentiality is no longer an issue. If there are no further questions, we would ask this court to affirm the judgment of the court below. Thank you, counsel. Do we have any time for revo? Thank you, Your Honor. Three brief points on the 7A issue. The first is that the defendants assert on page 29 of their brief that any information in records used in enforcement proceedings are withholdable under 7A if some information within those records are used in the course of investigations. And that broad categorical indication of 7A is inappropriate specifically because the information we seek is community-wide public source information. We're not saying that the government can never withhold public source information from their documents. In fact, in this case, in our reply brief, we said that we're not seeking information about the books that the FBI is reading. We're not looking for the public source websites that the government acknowledges in the Harvey Declaration are consulted in these records. If you had it, I understand. There's publicly available population ethnicity information for, we'll say, the state of Michigan. If the FBI is focusing in hypothetically on only Dearborn, no surprise why that is, then you – if what's in the agency records is just the ethnicity information about Dearborn or ethnic food stores or whatever was discussed earlier, wouldn't the mere fact, then, that out of the greater body of public information, the FBI has culled some of it out and is concentrating on that, that itself, then, would be subject to the exception? Would it not? You simply say, no, no, no, we get that because it's part of the greater body of public information. To answer your specific question, Your Honor, that information would not be protectable under the evidence that the defendants have submitted here. And that's because… Why? For two reasons. Ethnicity and race cannot, according to the dyad itself, be the sole or primary basis for an investigation. So if one of the documents says, for example, that the FBI is looking at Eros in Dearborn, that information is general. It is not specific, and it would not tip off any specific investigation target that they are the subject of inquiry. Except – and this is – for me, this is a question, even if it doesn't have the question mark at the end. If you have to have other articulable reasons why you're using that ethnicity or race information, the fact that you have then disclosed information about the Eros population in Dearborn, then tells the recipient that they then have additional information that justifies the use of that ethnic or racial information. And that alone, then, seems to me, at least arguably, fits within the exception. Two answers, Your Honor. The first is that based on the affidavits submitted in this case, the assertions are so general and conclusory that we don't know if that link between the investigation target and the community study is appropriate or reasonable. We can't make that assumption. So what would you have them say to make that link? Oh, we are looking. Even more plausibly, we're looking at Eros in Traverse City. Gee, we didn't know there were any Eros in Traverse City. Then all of a sudden, in the unusual case, it's the information that the fact that you even are looking at that that tips people off. Well, two things, Your Honor. The FBI has disclosed to San Francisco that it's looking at Russian and Chinese populations, for example. And those kinds of descriptors are broad and general. They don't tip off specific investigation targets. Second, it is plausible that with different evidence, the FBI could explain that a certain population is so concentrated, so small, so specific, and there are only a few investigation targets that could conceivably be linked to that group, perhaps because they're of a foreign nationality, of a country that is so tiny, that only one investigation could possibly be tipped off. Even descriptions at that level of generality, so we're not talking about disclosing any ethnicities, we're not disclosing any national origins, but we're giving additional factors that would show why the data would tip off an investigation. What authority do you have for what I'll call the lowest common denominator argument that you're making? And that is, if any office of the FBI anywhere has released something remotely similar, regardless of the circumstances, then the ACLU gets it from every other office. What if they just made a mistake? But that's not our argument, Your Honor. To be clear, the argument isn't that because it was disclosed here, and they may be withholding identical information here, the stuff here should be disclosed. The argument is that by looking at the documents they have disclosed,  we see what the documents look like, and we see that disclosure of just the census data and population statistics would not tip off or reveal the identity of the target. And we discuss in our brief the Newark document about the MS-13 gang. There's a map in that document that says Guatemala, El Salvador, Honduras on top, and an outline of the state of New Jersey. So we know that the government is tracking those communities. And that level of generality, disclosed, that kind of information about Michigan, isn't going to tip off specific targets, because ethnicity and race cannot be the sole or dominant factor justifying an investigation. My time is up, Your Honor, but I wanted to respond and make two points on the Blomar issue. The first is that this court would be the first to create a circuit-wide rule that FOIA exclusion claims, unlike other claims under the FOIA, can only be adjudicated through an entirely secret and expert process. We're not asking for this court to create something different. We're asking for this court to apply Blomar to a context for which the original sponsors of the exclusion provision itself understood very clearly from the legislative history I think we'd be the first to order that. In the context of exclusions, Your Honor. 3552C has been out there for 15 years, and presumably some of it has been used in the sense that the government has made these same kind of responses, it has a policy. It has been rarely used, precisely because requesters have not been able to understand. There's no case law on when an exclusion is appropriately or inappropriately applied. But maybe I've got this backwards. I thought you wanted this court to rule, as Judge Buggs just asked, that the district judge has no discretion to have an in-camera proceeding like he did in this case, that the judge in all cases has to follow a Blomar-like procedure. In the first instance. Whatever. But those procedures may or may not. But here, I thought, at the bottom line, we're really addressing whether there is a legal requirement to follow Blomar in all cases. And if the answer to that is no, then we would be addressing whether the district judge has used his discretion in choosing to use ex-parte in-camera versus Blomar under the facts of this particular case. Isn't that the framework in which we get this issue? Let me clarify, Your Honor. The district court, I don't believe, erred, because there's no authority on point on this circuit, or any circuit around the country. The circuits haven't spoken on this issue. So you're not saying he abused his discretion? No, you're not. We're saying the district court did the best it could, given the dearth of information. You're saying we should be requiring district judges to use Blomar in every case and take away or cabin that discretion? Well, this court defined it. By yes or no? Yes. Okay, thank you. Yes. And the standards we're reviewing, therefore, can't be abuse of discretion. And when you say you're not saying he did it wrong, you really are saying he did it wrong. You might say it was understandable because he didn't have authority, but if he didn't abuse his discretion, we wouldn't overturn it. Well, Your Honor, he didn't abuse his discretion. This court can establish a new rule going forward for FOIA exclusion claims in this circuit in light of the negative consequences of wholly ex parte secret and one-sided procedures, as we've discussed in our brief. The district judge, he did the best he could with what the law is out there from the circuits. But the disadvantages to that process are clear, and there's a strong presumption in the FOIA case law. The D.C. Circuit's decision in Philly lays it out, and that's why the Blomar procedure was started in the first place. A strong presumption for open and adversarial adjudication as much as possible and resort to ex parte submissions as a matter of last recourse. Thank you, counsel. Thank you. The case will be submitted. Clerk may call the next case.